668 So.2d 835 (1995)
S.W.B.
v.
R.C. and B.C.
2940383.
Court of Civil Appeals of Alabama.
August 4, 1995.
*836 Frances Crouser French, Auburn, for Appellant.
James E. Cox, Auburn, for Appellees.
MONROE, Judge.
This case involves the termination of parental rights for the child's biological parents and adoption of the minor.
The minor, 12-year-old B.M.W., has lived with R.C. and B.C. since she was about six months old. R.C. and B.C. have had legal custody of B.M.W. since January 1984. In August 1994, R.C. and B.C. filed a petition for the adoption of B.M.W. in the Lee County Probate Court. The petition was transferred to the Lee County Juvenile Court in September 1994. On January 26, 1995, after an ore tenus hearing, the trial court issued an order terminating the parental rights of B.M.W.'s biological parents and granting R.C. and B.C.'s petition for adoption. S.W.B., the girl's biological mother, appeals.
B.M.W. was born in April 1983. At the time, her mother, S.W.B., was 17 years old and unmarried. In October 1983, when the baby was six months old, S.W.B. took her to R.C. and B.C.'s home and asked them to watch her. B.M.W. has lived with R.C. and B.C. ever since. In January 1984, they were granted temporary custody of the child. In May 1984, the baby's biological father, W.H., filed a petition with the juvenile court requesting a blood test and custody of the baby. His petition was denied, and custody remained with R.C. and B.C.
The evidence shows that neither biological parent has provided any financial support for B.M.W. since October 1983. Although the biological mother occasionally visited the child during the first three years the adoptive parents had her, the biological mother has seen the child once in the seven years preceding the filing of the adoption petition. The biological father has not seen the child since June 1984. An attorney appearing at the adoption hearing on behalf of the biological father told the court that the biological father said that B.M.W. had been with R.C. and B.C. for a number of years and he believed she belonged with them.
As the trial court's order pointed out, the evidence showed that the child's adoptive parents participated in her school activities, participated in their local church, and provided a warm and loving home for the girl, even during times of financial pressure. B.M.W. testified that she wanted to be adopted by R.C. and B.C. and that she did not want to see her biological mother. She also told the trial court she wanted to maintain a relationship with her biological maternal grandmother.
On appeal, S.W.B. contends that the trial court was plainly and palpably wrong in finding that S.W.B. had abandoned B.M.W. and that the trial court was plainly and palpably wrong in terminating her parental rights where, she says, there was no showing of intentional abandonment.
We note that the trial court was presented evidence ore tenus; therefore, its judgment is presumed to be correct and will be set aside only if the record reveals that the judgment is plainly and palpably wrong. J.L.B. v. State Department of Human Resources, 608 So.2d 1367 (Ala.Civ.App.1992).
Under the Alabama Adoption Code, § 26-10A-1 et seq., Ala.Code 1975, consent or relinquishment of the adoptee is implied when the parents "knowingly [leave] the adoptee with others without provision for support and without communication," or when they otherwise [do not maintain] a significant parental relationship with the adoptee for a period of six months." § 26-10A-9(2), Ala.Code 1975. In short, the statute provides that relinquishment is implied when parents have knowingly abandoned their child. "Abandonment" is defined in the Code as
"a voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without *837 good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent."
§ 26-18-3(1), Ala.Code 1975. A trial court can terminate parental rights if it finds by clear and convincing evidence that the parents have, among other things, abandoned their children. M.H.S. v. State Department of Human Resources, 636 So.2d 419, 421 (Ala.Civ.App.1994); § 26-18-7, Ala.Code 1975.
At the close of the hearing, the trial court informed the parties that he found that S.W.B. had abandoned B.M.W. In its written order, the trial court found:
"Even though [S.W.B.] testified that she loves her daughter and does not want her to be adopted by Petitioners, this Court finds that Ms. [S.W.B.] has made very little if any effort to be a part of the child's life. Ms. [S.W.B.] has never furnished, nor has she attempted to furnish, any financial support for the child, nor has she given clothing or even Christmas and birthday presents to the child. Although Ms. [S.W.B.] has been in Court on several occasions regarding this child and has some knowledge of the operation of this Court, she has never made an attempt to regain custody of the child, nor has she attempted to get this Court to enforce her visitation rights with the child in light of the fact that she testified Petitioners withheld visitation from her."
Although the trial court did not use the word "abandon" in its written order, its findings indicate that it found that S.W.B. had abandoned B.M.W.
We could find no cases dealing with § 26-10A-9, Ala.Code 1975. However, the evidence in this case supports a finding of implied relinquishment of the child for adoption. The record shows that the biological mother knowingly gave B.M.W. to R.C. and B.C. when B.M.W. was an infant. For the past 12 years, R.C. and B.C. have reared B.M.W. as their own child. For at least the last seven years, the biological parents have provided no financial support for the child, they have not communicated with the child, and have not maintained even a nominal parental relationship with her. After showing no willingness or ability to be a parent to B.M.W. for 12 years, the biological mother cannot step in simply because an adoption petition was filed and now attempt to retain her parental rights. Clear and convincing evidence supports the trial court's finding that B.M.W. had been knowingly abandoned by her biological parents. Therefore, we hold that, by implication, S.W.B. and the biological father relinquished B.M.W. for adoption; see § 26-10A-9, Ala.Code 1975. The trial court's judgment terminating the biological parents' parental rights and granting the adoption is due to be upheld. See, e.g., M.J.G.L. v. State Department of Human Resources, 587 So.2d 1004 (Ala.Civ.App. 1991).
S.W.B. also argues that the trial court did not address the issue whether B.M.W. was dependent and whether any viable alternative to termination of parental rights existed, that the court failed to exhaust all viable alternatives before terminating her rights, and that the court erred in terminating her parental rights where the state Department of Human Resources failed to make reasonable efforts toward rehabilitating her.
This case was before the court on a petition for adoption of a child who, as discussed above, had been abandoned by her biological parents. This case is not strictly about the termination of parental rights for the protection of the child. The Alabama Adoption Code, § 26-10A-1, et seq., Code of Alabama 1975, was adopted in 1990, replacing earlier law on the adoption of children, § 26-10-1, et seq., Code of Alabama 1975. Because the Adoption Code is relatively new, there is little case law addressing its provisions. The Committee Comments to § 26-10A-9, dealing with implied consent of a parent for the adoption of his or her child, states:
"Just as acceptance of the terms of a commercial contract can be implied from the conduct of a party, so may the consent of a person to the adoption be implied from the conduct of that individual. When it is not possible to obtain the actual consent of *838 a person who is specified in § 26-10A-7, this section enumerates instances in which a person's consent may be implied from his or her acts or omissions with respect to his or her duty to care for the adoptee in the past."
As discussed above, because S.W.B. had relinquished B.M.W. for adoption, see § 26-10A-9, she gave her implied consent to the adoption. B.M.W.'s father stated that he believed the child should stay with R.C. and B.C. Therefore, the trial court had the consent of both of B.M.W.'s biological parents to B.M.W.'s adoption by R.C. and B.C. See, e.g., Meyers v. Smith, 518 So.2d 734 (Ala.Civ. App.1987). That consent rendered the need for finding the child dependent or finding whether less drastic alternatives to termination of parental rights unnecessary. Therefore, the issues regarding whether the trial court followed the proper procedures in terminating S.W.B.'s parental rights are moot. Therefore, we hold that in cases in which the biological parents have abandoned the child and the people with legal custody of the child seek to adopt the child, it is not necessary to determine whether the child is dependent and whether the trial court has alternatives less drastic than terminating the abandoning parents' rights.
The judgment terminating the parental rights of B.M.W.'s biological parents and granting R.C. and B.C.'s petition for adoption is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, and CRAWLEY, JJ., concur.
THIGPEN, J., concurs in result.